IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MEDQ, INC. §
 §
    Plaintiff, §
 §
VS. § NO. 3-07-CV-0949-BD
 §
HIGHFIELD OPEN MRI, INC. §
 §
    Defendant. §

## MEMORANDUM OPINION AND ORDER

Defendant Highfield Open MRI, Inc. has filed a motion to dismiss this case for lack of personal jurisdiction. For the reasons stated herein, the motion is granted.

I.

This is a civil action brought by Plaintiff medQ, Inc., a Texas corporation that provides software products and consulting services to diagnostic imaging centers, against one of its customers, Defendant Highfield Open MRI, Inc., a Pennsylvania corporation. (*See* Not. of Rem. at 1-2, ¶ 3 & Exh. A at 1-2, ¶¶ 2-3, 6-7). In its complaint, plaintiff alleges that defendant entered into an agreement to purchase a computer software system. (*Id.*, Exh. A. at 1-2, ¶¶ 3, 7). Although plaintiff performed its obligations under the agreement, defendant has failed and refused to pay approximately $90,000 due and owing on its account. (*Id.*, Exh. A at 3, ¶ 9).

On April 30, 2007, plaintiff sued defendant in Texas state court for breach of contract and quantum meruit. After removing the case to federal court,[1] defendant filed the instant motion to

---

[1] Federal subject matter jurisdiction is proper because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

dismiss for lack of personal jurisdiction. The motion has been fully briefed by the parties and is ripe for determination.

II.

The assumption of personal jurisdiction over a nonresident defendant in a diversity case involves a two-step inquiry. First, the nonresident must be amenable to service of process under the forum state's long-arm statute. *See Mink v. AAAA Development LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Second, the exercise of jurisdiction must comport with due process. *Id.* Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the court limits its inquiry to whether the exercise of personal jurisdiction over the nonresident comports with federal constitutional due process requirements. *See Religious Technology Center v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1085 (2004) (citing cases).

The due process requirements for exercising personal jurisdiction over a nonresident focus on whether the party has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (internal quotations omitted); *see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.), *cert. denied*, 115 S.Ct. 322 (1994). "Minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). Specific jurisdiction exists when the contacts with the forum state arise from, or are directly related to, the cause of action. *Wilson*, 20 F.3d at 647. General jurisdiction is proper when the nonresident has other "continuous and systematic" contacts with the forum unrelated to the pending litigation. *Id.* If a nonresident has sufficient minimum contacts with the forum state, the court must consider

whether the exercise of personal jurisdiction would be "unfair" and "unreasonable." *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

The plaintiff has the burden of establishing a prima facie case of personal jurisdiction. *See Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). The court can make this determination without an evidentiary hearing based on the complaint, affidavits, and information obtained during discovery. *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). The uncontroverted allegations in the complaint must be taken as true and any conflicts in the evidence must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

III.

Plaintiff concedes that defendant does not have the type of "continuous and systematic" contacts with Texas necessary to establish general jurisdiction. (*See* Plf. Resp. Br. at 7 n.2). Rather, plaintiff argues that the exercise of specific jurisdiction is proper because defendant entered into a contract that originated in Texas and covered products that were delivered to defendant "F.O.B. Dallas, TX." Plaintiff further alleges that defendant had "extensive communications" by telephone and e-mail with representatives in Texas related to the negotiation and performance of the contract made the basis of this suit. (*Id.* at 8).

A.

A federal court may assume specific jurisdiction over a nonresident who "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958). To determine whether specific jurisdiction exists, a court must "examine the

relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining Construction Corp. v. Adams Co. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996), *citing Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Electrosource*, 176 F.3d at 871-72, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The contacts with the forum state must be such that "it is foreseeable that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* at 872, *quoting World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). It is well-established that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004), *quoting Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 1892 (1987). In a breach of contract case, the court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," to determine whether a nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999), *quoting Burger King*, 105 S.Ct. at 2185.

B.

The evidence shows that Dr. Jay Gosai, President of Highfield, contacted plaintiff by telephone in June 2005 to inquire about its products and services. (Plf. Resp. App. at 4, ¶ 3). At Gosai's request, plaintiff performed an on-line demonstration of its Q/RIS 3000 software system for defendant. (*Id.* at 4, ¶ 4). This on-line demonstration, or "Web-X," originated from plaintiff's office

in Dallas, Texas. (*Id.*). After viewing the Web-X demonstration, Gosai asked to observe a "real world" demonstration of the software system. (*Id.* at 4-5, ¶ 5). In July 2005, Gosai traveled to Carbondale, Illinois, where he was met by one of plaintiff's representatives. (*Id.*). Thereafter, the parties negotiated the terms of a sales contract over the telephone and in a face-to-face meeting held in Pennsylvania. (*Id.* at 5, ¶¶ 6-7). Negotiations continued by telephone and e-mail until the parties finalized their agreement on or about August 27, 2005. (*Id.* at 5-6, ¶¶ 8-9). The sales contract, which was signed by defendant in Pennsylvania and faxed to plaintiff in Texas, specifies that "[a]ll products are F.O.B. Dallas, TX." (*Id.* at 6, ¶¶ 10-11 & Exh. A.). Upon the execution of this agreement, defendant sent data and information to Texas which were used by plaintiff to create a customized computer program. (*Id.* at 6-7, ¶¶ 15-16). This process lasted more than a year, during which time defendant's employees communicated with plaintiff's representatives in Texas by telephone and e-mail. (*Id.* at 7, ¶ 17). In August 2006, after plaintiff finished its work on the project, it sent representatives to Pennsylvania to complete the installation of the computer system. (*Id.* at 8, ¶ 19). As part of the installation process, plaintiff shipped component parts, including two speech microphones, by common carrier to defendant in Pennsylvania. (*Id.* at 8, ¶¶ 20-21). Pursuant to the "F.O.B." provision of the sales contract, title to these products passed to defendant in Texas. (*Id.* & Exh. A).

Even when viewed in the light most favorable to plaintiff, this evidence fails to satisfy the purposeful availment requirement of the due process minimum contacts analysis. Defendant has absolutely no contacts with Texas, other than the fortuitous act of entering into a contract with a Texas resident. The communications between the parties in negotiating and carrying out the agreement do not, either by themselves or in combination with other alleged contacts, support the exercise of specific jurisdiction. *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312

(5th Cir. 2007), *citing Holt Oil*, 801 F.2d at 778 ("An exchange of communications in the course of developing and carrying out a contract [ ] does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."); *Freudensprung*, 379 F.3d at 344 (combination of mailing payments to the forum state, engaging in communications related to the execution and performance of a contract, and the existence of a contract between a nonresident defendant and a resident of the forum are insufficient to establish minimum contacts). Nor does the fact that plaintiff partially performed its obligations under the contract in Texas. *Moncrief Oil*, 481 F.3d at 313; *see also SMK Painting Co. v. Flournoy Construction Co.*, No. 3-99-C-0916-G, 1999 WL 1017779 at *4 (N.D. Tex. Nov. 8, 1999) ("[N]egotiating, executing, and even partially performing an isolated contract with a resident of the forum will not, without more, constitute the minimum contacts necessary to confer jurisdiction."). While the "F.O.B." term in the sales contract is one factor to consider in determining whether defendant has minimum contacts with the forum state, *see Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471 n.10 (5th Cir.), *cert. denied*, 126 S.Ct. 2968 (2006), it is not dispositive. *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188-89 (5th Cir. 1978) (concluding that F.O.B. shipment, without more, does not constitute purposeful availment of the laws of the forum state); *see also Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197 n. 8 (5th Cir. 1980) (jurisdiction does not depend on the technicalities of when title passes). Because plaintiff has failed to show by the terms of the contract or the course of performance that defendant made itself amenable to suit in Texas, this case must be dismissed for lack of personal jurisdiction.

## CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction [Doc. #4] is granted. The court will dismiss this case by separate order filed today.

SO ORDERED.

DATED: September 18, 2007.

_____
JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE